UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

JENNIFER SILPE,                          :
                                         :
          Plaintiff,                     :
                                         :
     v.                                  :     Docket No. 02:05-CV-049
                                         :
LCA-VISION, INC.,                        :
                                         :
          Defendant.                     :

## MEMORANDUM OPINION AND ORDER

        This lawsuit involves a personal injury claim brought by
Plaintiff Jennifer Silpe for damage done to her eye during
Laser-Assisted *In Situ* Keratomileusis ("LASIK") surgery performed
by Defendant LCA-Vision, Inc. ("LCA").  Silpe filed her complaint
on January 31, 2005, in Chittenden County Superior Court.  On
February 28, 2005, LCA removed the case to this Court on the
basis of diversity of citizenship.  LCA has filed a Motion to
Dismiss for Lack of Personal Jurisdiction pursuant to Federal
Rule of Civil Procedure 12(b)(2) (Doc. 3).  LCA asserts it does
not have sufficient "minimum contacts" to the State of Vermont to
establish personal jurisdiction.  For the reasons stated below,
LCA's motion is denied without prejudice.

## Factual Background

        The following facts are taken as true for the purposes of
this motion.  On December 8, 1998, Silpe went to the optometry
section of Costco in Colchester, Vermont, for an eye exam.  Silpe
Aff. ¶ 1 (Doc. 14).  She was examined by Dr. Michael Taub.  Id. ¶
2.  Silpe asked Dr. Taub if she was a candidate for LASIK

surgery.  Id. ¶ 3.  After performing an examination, Dr. Taub
suggested that Silpe could have LASIK surgery and that he would
schedule an appointment for the surgery to be performed at the
LCA Vision LASIK Center in Albany, New York.  Id. ¶¶ 4-5.  This
center is owned by the defendant.

Dr. Taub told Silpe that the surgery would cost $5,000.  Id.
¶ 6.  He said that this fee would cover the pre-operative and
post-operative care he would render in connection with this
surgery.  Id.  Silpe paid Dr. Taub $100 toward the $5,000 cost of
the operation.  Id. ¶ 7.  Dr. Taub arranged for Silpe's bilateral
LASIK surgery to be performed at LCA's Albany facility on
December 12, 1998.

On the day of her surgery, LCA gave Silpe a receipt that
credited her with the $100 she paid Dr. Taub.  Id. ¶ 10.  This
receipt identifies Dr. Taub as a "co-managing" doctor.  Procedure
Receipt (Doc. 14, Ex. 1).  Before her bilateral LASIK surgery was
performed, LCA employees told Silpe that her post-operative
visits with Dr. Taub were included in the $5,000 payment she made
to LCA.  Id. ¶ 15.

Silpe saw Dr. Taub for follow up visits and he arranged for
the revision surgery that was performed on Silpe's left eye at
LCA's Albany facility in March 1999.  Id. ¶¶ 11-13.  Dr. Taub
entered his findings concerning his post-operative examinations
on LCA forms.  Id. ¶ 14.

### Discussion

Silpe bears the burden of proving this Court's personal

2

jurisdiction over LCA.  <u>Metropolitan Life Ins. Co. V. Robertson-Ceco Corp.</u>, 84 F.3d 560, 566 (2d Cir. 1996).  That burden, however, is defined by the status of the case at the time of the filing of the dismissal motion.  If discovery has not been completed, a plaintiff faced with a challenge to jurisdiction need make only a prima facie showing that personal jurisdiction is satisfied.  <u>Real Good Toys, Inc. v. XL Machine Ltd.</u>, 163 F. Supp. 2d 421, 423 (D. Vt. 2001) (citing <u>Hoffritz for Cutlery, Inc. v. Amajac, Ltd.</u>, 763 F.2d 55, 57 (2d Cir. 1985)).  That showing may be based upon the submission of affidavits, and such documents are to be construed in the light most favorable to the nonmoving party.  <u>Hoffritz</u>, 763 F.2d at 57.  As the Motion to Dismiss was filed pre-discovery, the Court will rule on the basis of the jurisdictional allegations in Silpe's submissions.

To establish personal jurisdiction in this diversity action, Silpe must show that LCA is amenable to suit under Vermont's long arm statute.  <u>See</u> <u>Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996).  The Vermont long arm statute, Vt. Stat. Ann. tit. 12 § 913(b) provides:

> Upon the service [of process on a party outside the state], and if it appears that the contact with the state by the party or the activity in the state by the party or the contact or activity imputable to him is sufficient to support a personal judgment against him, the same proceedings may be had for a personal judgment against him as if the process or pleading had been served on him in the state.

The language of this provision permits assertion of personal jurisdiction "to the full extent permitted by the Due Process

Clause." <u>Northern Aircraft, Inc. v. Reed</u>, 154 Vt. 36, 40 (1990).

There are two issues to address in deciding upon jurisdiction: (1) did Defendant have sufficient "minimum contacts" with the forum state for purposes of personal jurisdiction; and (2) is the court's exercise of jurisdiction "reasonable." <u>Metropolitan Life</u>, 84 F.3d at 567.  For the purposes of the "minimum contacts" inquiry, a distinction is made between specific jurisdiction and general jurisdiction.  <u>Id.</u> Specific jurisdiction exists when a state "exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).  General jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.  <u>Id.</u> at 415 n.9.  Courts impose a stringent minimum contacts test for general jurisdiction, requiring the plaintiff to demonstrate the defendant's "continuous and systematic general business contacts" with the forum state.  <u>Id.</u> at 416.  In contrast, a plaintiff can establish specific jurisdiction by proving the defendant "purposely availed" itself of the privilege of doing business in the state and that the claim directly arises out of those contacts.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 472 (1985).

LCA argues that it does not have sufficient contact with

Vermont to support general jurisdiction.  This appears to be correct.  LCA is a Delaware corporation with its principle place of business in Ohio.  LCA has no place of business in Vermont.  LCA also claims that it has never actively solicited business in Vermont.

Silpe does not claim that LCA has the continuous and systematic general business contacts with Vermont to support general jurisdiction.  Rather, Silpe argues that the Court can exercise specific jurisdiction over LCA.  She suggests that her claim arises out of LCA's activities in Vermont.  In particular, she claims that Dr. Taub acted as LCA's agent in Vermont.  In support of this conclusion she suggests that: (1) Dr. Taub arranged for the surgery to be performed at LCA's facility; (2) Dr. Taub performed pre-operative and post-operative care for LCA; (3) Dr. Taub collected one hundred dollars toward the $5000 fee for the operation; and (4) the $5000 Silpe paid to LCA included Dr. Taub's services.

In response to these claims, LCA submitted the affidavit of Craig Joffe, its general counsel.  Joffe simply alleges, in the most conclusory of terms, that Dr. Taub has never been an agent of LCA and there has never been a contract between LCA and Dr. Taub.  As this motion is before the Court prior to discovery, the Court must accept Silpe's allegations as true wherever they conflict with an affidavit submitted by LCA.  Moreover, even if the Court were not required to construe the affidavits in the light most favorable to Silpe, her submissions are supported by

corroborating documents.  LCA gave Silpe a receipt identifying Dr. Taub as a "co-managing" doctor.  Similarly, Silpe submitted documents supporting her claims that Dr. Taub collected $100 for LCA and that her payment to LCA included Dr. Taub's post-operative care.  LCA has offered no evidence in rebuttal other that its bare claim that Dr. Taub was not its agent.  Given that Silpe's allegations are assumed to be true at this stage of the litigation, she has made a prima facie showing of minimum contacts to warrant a finding of specific jurisdiction.

Even though Silpe has established specific jurisdiction, the Court must still determine whether exercising personal jurisdiction over the defendant is 'reasonable.'  The Court must ask whether requiring LCA to participate in the litigation in Vermont would offend "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  When conducting this inquiry courts should "evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'"  Burger King, 471 U.S. at 477 (quoting World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980)).

LCA argues that these factors support dismissal of this action.  However, LCA's arguments are based on its view that Dr.

6

Taub was not its agent and that this action is unrelated to Vermont.  As the Court must accept Silpe's allegations as true, LCA's arguments are unpersuasive.

Silpe's claim is based, at least in part, on Dr. Taub's actions in Vermont.  Vermont has an important interest in the quality of medical care offered in the state.  Also, the records relating to Dr. Taub's actions are in Vermont.  Similarly, evidence regarding Silpe's alleged damages is likely to be in Vermont.

Although LCA is based in Ohio, it does not limit its operations to that state.  In fact, LCA maintains a facility near Vermont in Albany, New York.  Thus, it is not an unreasonable burden on LCA to require it to defend this action in Vermont.  Moreover, LCA has offered nothing to suggest this Court could not provide an efficient and timely resolution of the case.

Based upon the facts submitted to the Court so far, there is nothing in the record that would suggest that location of the trial in Vermont would offend traditional notions of fair play and substantial justice.  Silpe has therefore satisfied her obligation to make out a prima facie case that LCA has had sufficient "minimum contacts" with Vermont to warrant a finding of personal jurisdiction over it and that trial in this jurisdiction would be reasonable.

## Conclusion

The Court is aware of the early stages of the proceedings and the presumptions of facts that must be made in Silpe's favor.

7

Discovery should test the reliability of Silpe's factual assertions and clarify issues of prejudice that may be suffered by either party.  Either party is free to resubmit this issue to the Court for review upon completion of discovery.

For the reasons stated above, the Court hereby DENIES LCA's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 3).


Dated at Burlington, Vermont this 19th day of April, 2005.

/s/ William K. Sessions III_____
William K. Sessions III
Chief Judge